IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **KIMBERLY WASHINGTON**, | : | |
| 10 Stonegate Terrace, Apt. 201 | : | |
| Zion Crossroads, VA 22942 | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| | : | |
| v. | : | Case No. __3:22-cv-41__ |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **OFFENDER AID AND RESTORATION OF** | : | |
| **CHARLOTTESVILLE-ALBEMARLE, INC**., | : | |
| 750 Harris St., Suite 207 | : | |
| Charlottesville, VA 22903 | : | |
| | : | |
| *Defendant*. | : | |

## COMPLAINT FOR EQUITABLE AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Kimberly Washington ("Plaintiff" or "Ms. Washington.") by and through her undersigned counsel, Jessica Childress, Esq., complains against Defendant, Offender Aid and Restoration of Charlottesville-Albemarle, Inc. ("Defendant" or "OAR") and in support thereof states:

## INTRODUCTION

1.  This action arises from the racial and sex-based harassment, retaliation, and death threats to Ms. Washington, a sixteen-year employee of OAR, and OAR's failure to take appropriate remedial action or reasonably provide for the safety of Plaintiff after Ms. Washington received multiple racist, sexist, and threatening letters from an

1

anonymous person associated with OAR.   In retaliation for speaking up about racial

equity for OAR's black female employees during an OAR staff meeting held on June

30, 2020, Kimberly Washington, a dedicated and hardworking Senior Pretrial Officer

of OAR, became the victim of a series of hate crimes committed by an anonymous

harasser associated with Ms. Washington's employer, OAR.    This case is about Ms.

Washington, a woman who courageously spoke up about racial and gender pay equity

for black women at OAR and subsequently was subjected to a series of racially-

motivated hate crimes by an anonymous harasser associated with her employer, OAR.

On July 1, 2020, Ms. Washington's life changed forever when an anonymous harasser

associated with OAR placed the first of three racist, sexist, and hate-filled letters in

Ms. Washington's workplace mailbox.

2.    On July 1, 2020, the day after Ms. Washington voiced her concerns about black

women not being promoted at OAR, Ms. Washington walked to her mailbox and

found the vilest letter that she had ever seen.

3.    The letter that Ms. Washington found in her mailbox on July 1, 2020 read, "Kim-

Nigga girl shut the fuck up during meetings    Lives don't matter!"

4.    The workplace immediately became unsafe for Ms. Washington that day.   To Ms.

Washington's dismay, OAR did not launch a thorough, prompt internal investigation

into the threats that she received, nor did they effectively enhance their security after

Ms. Washington received the first hate-filled and threatening letter in her OAR

mailbox.  Shortly after receiving the first racist, sexist, hate-filled letter in her staff

mailbox, Ms. Washington received two additional racist, sexist, and hate-filled letters

written on OAR letterhead and sent in OAR envelopes, in which she was addressed as

a "nigga bitch" and a "nigger bitch[]."  To date, OAR has not found the culprit of

these letters, but instead, OAR has responded by retaliating against Ms. Washington

for engaging in statutorily protected activity.

5.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000, *et. seq*, the Virginia Human Rights Act (as

amended) ("VHRA"), and the Virginia Whistleblower Protection Law ("WPL").

## PARTIES

6.  Plaintiff, Kimberly Washington, is an African-American woman who resides in Zion

Crossroads, Virginia. Ms. Washington is fifty-two years old.

7.  Defendant, Offender Aid and Restoration of Charlottesville-Albemarle, Inc., is a

private non-profit organization that provides pretrial investigation/supervision,

community correction, and reentry services to persons located in Charlottesville,

Albemarle, Fluvanna, Goochland, Green, Louisa, Madison, Nelson, and Orange,

Virginia.  OAR's office is located in Charlottesville, Virginia.

8.  During the relevant period, Defendant employed Plaintiff, Ms. Washington, and Ms.

Washington is currently employed by Defendant.

9.  During the relevant period, Ms. Washington was Defendant's employee, within the

meaning of Title VII, the Virginia Human Rights Act (as amended), and the Virginia

Whistleblower Protection Law.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331

as it asserts a claim that arises under the Constitution, laws or treaties of the United

States, specifically Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000(e),

*et. seq.* This Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District under 28 U.S.C. § 1391 (b) and 42 U.S.C. § 2000e-5(f)(3). OAR has an office in Charlottesville, Virginia, this district, and Defendant transacts substantial business in this district on an ongoing basis. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and Defendant maintains employment records related to this action in Charlottesville, Virginia, this district.

12. Accordingly, this Court has jurisdiction over this action, and venue is proper.

## EXHAUSTION OF REMEDIES

13. Plaintiff has exhausted all of her administrative remedies.

14. Plaintiff, through counsel, filed a charge with the Richmond Field Office of the United States Equal Opportunity Commission ("EEOC") on December 22, 2020 alleging discrimination and harassment on the basis of race, sex, color, and alleging retaliation for her engagement in protected activity. (See Exhibit A)

15. In Plaintiff's charge of discrimination, she requested that her charge be cross-filed with her state or local agency, the Virginia Division of Human Rights (now known as the Virginia Office of Civil Rights).

16. On January 26, 2022, the EEOC issued Ms. Washington a right to sue letter. (See Exhibit B).

17. On April 21, 2022 Ms. Washington and Defendant entered into a tolling agreement to "toll the running of the statute of limitations on Plaintiff's potential claims against Defendants" until July 25, 2022. (See Exhibit C).

18. According, Ms. Washington timely files this action.

## STATEMENT OF FACTS

19. Ms. Washington currently serves as a Senior Pretrial Officer at Offender Aid and
    Restoration.   She has been employed with OAR since May 2006.  Ms. Washington
    began her employment at OAR as a probation officer, a role in which she supervised
    misdemeanor probation clients to ensure their compliance with their court-ordered
    obligations.  Furthermore, in this role, she used interventions to respond to her clients'
    needs and risks.   During her employment with Defendant, Ms. Washington has been a
    team-player, a leader, and a dedicated colleague who contributed to helping Defendant
    achieve its organizational mission.

20. In her current role as a Senior Pretrial Officer, Ms. Washington supervises pretrial
    defendants to ensure court appearances, completes bond investigations, and makes
    recommendations regarding pretrial defendants.

21. OAR's Employee Handbook provides that OAR is committed to providing equal
    employment opportunities "for all employees and job applicants regardless of their
    race, color, religion, sex, age, national origin, disability, sexual orientation, and
    political affiliation, and any other status protected by applicable law."   Furthermore,
    OAR's employment policies provide that OAR "strives to keep the workplace free
    from all forms of unlawful discrimination, including harassment and retaliation."
    OAR has miserably failed to provide a workplace free of discrimination, harassment,
    and retaliation for Ms. Washington.

22. Ms. Washington loved her job before someone associated with OAR sent her racist
    and life-threatening letters.  Ms. Washington often stayed at the office beyond the

hours that she was required to work in order to assist her colleagues in completing

their work.  Ms. Washington took pride in delivering outstanding service to the clients

and community that she served at OAR.

23.  Ms. Washington's personal and professional life took a turn for the worst on June 30,

2020.

24. On June 30, 2020, Ms. Washington attended a Zoom meeting hosted by Ross Carew,

the OAR Director.  The topic of the meeting was racial equality.  Staff members of

OAR attended the meeting.

25. Ms. Washington actively participated in the meeting and spoke up regarding the racial

and gender equity issues that she perceived to be plaguing OAR.

26. During the meeting, Ms. Washington openly stated that OAR has never promoted a

black woman to a paid leadership position during her time working at OAR and that

there has never been a black female promoted at OAR.

27. During the staff meeting, Ms. Washington publicly engaged in protected activity by

voicing the fact that OAR had never promoted a black woman to a paid leadership

position during her time working at OAR and that there had never been a black

woman promoted at OAR.

28. On July 1, 2020, the day after Ms. Washington participated in the OAR staff meeting

on racial equality, Ms. Washington's work environment immediately transformed into

a racially hostile work environment, in retaliation for Ms. Washington's engagement

in the protected act of verbally opposing OAR's failure to promote black women.

29. On July 1, 2020 the day after the meeting, in retaliation for Ms. Washington engaging

in protected activity during the June 30, 2020 meeting, Ms. Washington received a

threatening, racially-charged letter in her OAR staff mailbox (see Exhibit D).   The

letter stated, "Kim-Nigga girl shut the fuck up during meetings    Lives don't matter!"

30. The letter that Ms. Washington received on July 13, 2020 hatefully referenced Ms.

Washington's skin color (black/brown) by including a black square before the words,

"Lives Don't Matter."  This letter also hatefully addressed Ms. Washington using the

racist, sexist epithet, "nigga girl."

31. Ms. Washington immediately reported the incident to Ross Carew, the Executive

Director of OAR.  The assistant director of OAR, Susan Morrow, called the police

regarding the letter.

32. The Charlottesville police visited the OAR office on July 1, 2020, met with Ms.

Washington, and created a police report regarding the incident.

33. The Commonwealth's Attorney's office subsequently assigned Ms. Washington a

victim witness advocate.

34. On or around July 1, 2020, Susan Morrow (the Assistant Director of OAR), suggested

that Carew publicly announce to OAR staff that the person responsible for sending

Ms. Washington the racist notes would be terminated. Upon information and belief,

Carew never made this announcement. Subsequently, Ms. Washington continued to

receive racist, sexist threatening letters.  OAR did not enhance its security in any way

that would act as a deterrent to the racially and gender motivated terror that Ms.

Washington experienced. OAR's failure to take prompt, remedial action amounted to

OAR's acquiescence to the racist conduct that Ms. Washington suffered.  OAR's

failure to take prompt, remedial action permitted the vile race and sex-based

harassment of Ms. Washington to continue.

35. Despite being terrified over the racist, sexist letter that she had just received, Ms. Washington continued working on July 1, 2020.

36. After receiving the letter on July 1, 2020, Ms. Washington's sleep patterns immediately changed.  On July 1, 2020, she slept less than one hour.

37. Mentally shaken by the threatening letter she had received in her OAR staff mailbox, Ms. Washington began having nightmares.

38. On July 7, 2020, OAR Executive Director Ross Carew held a meeting regarding race and the criminal justice system. During the meeting, he announced that a staff member had received a racist note in their staff employee mailbox and that a criminal investigation had begun.  Upon information and belief, during this meeting, he did not say that the culprit of the racist letter would be immediately terminated.

39. OAR's lukewarm, ineffective response to Ms. Washington receiving the first racist letter amounted to acquiescence to the vile and threatening conduct to which someone associated with OAR subjected Ms. Washington.  OAR's acquiescence and ineffective remedial measures to address the first racist, sexist letter that Ms. Washington received on July 1, 2020 led to someone associated with OAR sending Ms. Washington a second racist, sexist letter just two weeks after Ms. Washington received the first letter.

40. An anonymous harasser associated with OAR mailed a second racist letter to Ms. Washington's home on or around July 13, 2020.   This letter was more threatening than the first letter, as it referenced Ms. Washington as a "nigga bitch" and threatened that she would "be the next one with a noose around [her] neck" if she "keep[s]

8

talking." See Exhibit E.  The harasser's threat to put a noose about Ms. Washington's

neck constituted a death threat.

41. Nooses are the object used to hang or lynch people.   Lynching has a sordid history in

the United States. Countless African-Americans have been murdered by hate groups

hanging them from trees in a public display to threaten other African-Americans.[1]

42. The racist sexist, life-threatening letter that Ms. Washington received on July 13, 2020

was written on OAR letterhead, and the harasser sent the letter in an OAR envelope.

43. The July 13, 2020 letter contained strange symbols, resembling Nazi swastikas.

44. Upon receiving the letter on July 13, 2020, Ms. Washington immediately had a panic

attack.

45. Ms. Washington called her victim witness advocate for help after receiving this

violent, threatening letter at her home.

46. In addition to contacting her victim witness advocate, Ms. Washington also reported

receiving the letter to OAR Executive Director, Ross Carew, Susan Morrow, and

Andre Key.  Carew subsequently visited Ms. Washington's home to review the letter.

Carew has personally viewed the racist, sexist letters that Ms. Washington has

received on July 1, 2020 and July 13, 2020, and he has knowledge of the severity of

the threat that they pose to Ms. Washington's life.

47. On July 14, 2020, Ms. Washington had a Zoom meeting with the Charlottesville

Commonwealth's Attorney Joe Platania and her victim witness advocate.  Ms.

---

[1] In Virginia, it is a felony to display a noose on a highway or other public place in a manner having a direct tendency to place another person in reasonable fear or apprehension of death or bodily injury.  Va. Code Ann. § 18.2-423.2.

Washington suggested bringing the FBI into the investigation of the letters that she had received.

48. On July 14, 2020, the day after receiving the second racist, threatening letter in which the culprit of the letter threatened to put a "noose" around Ms. Washington's neck if she continued to talk, Ms. Washington had a panic attack in her local grocery store.

49. On or around July 15, 2020, Federal Bureau of Investigation contacted Ms. Washington regarding the threats that she had received from someone associated with OAR.

50. Ms. Washington actively participated in providing information to the Commonwealth's Attorney's office and the FBI regarding the vile letters that she had received.

51. On or around July 15, 2020, an FBI agent called Ms. Washington and advised her that he would be in touch with her to let her know if the FBI would be opening a case regarding her matter.

52. On or around July 16, 2020, the FBI agent called Ms. Washington back to inform her that an FBI case would be opened regarding her matter.

53. On or around July 22, 2020, Ms. Washington was prescribed a sleep medication to help her sleep, as she was sleeping only seven to nine hours a week since receiving the first racist, sexist letter.

54. After receiving the second letter, on or around July 13, 2020, Ms. Washington began receiving psychological counseling to help her cope with the psychological trauma that she had suffered from as the result of being the victim of two racially-motivated and sex-motivated hate crimes perpetrated by someone associated with OAR.

55. On or around August 11, 2020, Ms. Washington was prescribed anxiety medication to help her manage the extreme anxiety that she was experiencing as a result of receiving the racist, sexist letters, with one containing a death threat.

56. On or around September 25, 2020, Ms. Washington was diagnosed with post traumatic stress disorder.

57. Since receiving the racist letters, Ms. Washington has been diagnosed with sleep deprivation, general anxiety, reactive depression, and post-traumatic stress disorder.

58. OAR failed to internally conduct a prompt, thorough investigation into the racist letters that Ms. Washington received.

59. OAR failed to take prompt, reasonably effective measures to deter the anonymous harasser(s) from harassing Ms. Washington on the basis of her race, sex, and color.

60. OAR failed to immediately place any substantive security measures in place to deter the anonymous culprit from continuing to harass Ms. Washington on the basis of her race, sex, and color and in retaliation for her speaking up about racial equity issues at OAR.

61. Just weeks later, on August 4, 2020, Ms. Washington received a call on her cell phone at approximately 3:10 PM from OAR.   No one responded when she picked up the phone.  Ms. Washington obtained phone records from Verizon, her cell phone carrier, which evidences that someone from OAR called her from an OAR phone number (434-220-0408) on August 4, 2020 and did not say anything.

62. Ms. Washington reported the call to her program manager, Andre Key, and he reported them to Ross Carew.  Ms. Washington also notified Carew about the call, but

he informed her that no one from OAR called her, despite phone records which
demonstrate that someone from OAR did call her.

63. Upon information and belief, Carew did not investigate this call or do anything to
ensure that Ms. Washington would not receive further threating calls. Carew made no
public announcement to OAR staff about this threatening call.

64. After receiving the threatening call from an OAR phone number on August 4, 2020,
less than three months later, Ms. Washington received a third racist, sexist threatening
letter. This time, the harasser came to Ms. Washington's home to personally deliver
the letter.

65. On or around the morning of October 13, 2020, Ms. Washington opened her bedroom
blinds shortly before 8:00 am. Looking outside of her window, she saw a yellow
paper on her car windshield.

66. Upon seeing the yellow paper, Ms. Washington panicked and called the FBI and left a
message. She also called her husband and spoke with him. She then called her victim
witness advocate and left a message for her. Additionally, she called Andre Key and
left him a message. She attempted to call Ross Carew, but she did not get in touch
with him because her victim witness advocate was calling her at the same time.

67. Ms. Washington spoke with her victim witness advocate, and subsequently Andre Key
returned Ms. Washington's phone call. Thereafter, an FBI agent returned Ms.
Washington's phone call.

68. On October 13, 2020, Andre Key drove to Ms. Washington's house, and Ms.
Washington met him outside of her home and retrieved the yellow paper off her car
windshield. Upon retrieving the yellow paper, which was an OAR envelope with the

words, "Kim Kim" written on it in red marker, they both went inside of Ms.

Washington's home to inspect the contents inside of the OAR envelope. *See* Exhibit

F.

69. Ms. Washington and Andre Key opened the OAR envelope and read the racist, sexist

letter that was inside of it, which read:

> *"Kim, you are not missed.  Ross said you are just like Mayor Walker.  2*
>
> *Nigger Bitches.  We hate blacks.  Saving stamps"*

*See* Exhibit F.

70. The letter that Ms. Washington received on October 13, 2020 hatefully referenced Ms.

Washington's skin color (black).  This letter also hatefully referred to Ms. Washington

using the sexist term, "bitch."   Finally, this letter used the racist, extremely offensive,

painful racial epithet, "nigger," to refer to Ms. Washington and the former African-

American woman Mayor of Charlottesville, Nikuyah Walker.  Mayor walker was the

Charlottesville Mayor at the time the harasser sent Ms. Washington this letter. [2]

71. Like the second racist letter that Ms. Washington received, the harasser wrote this

racist, sexist letter on OAR letterhead and placed the letter inside of an OAR envelope.

The third racist letter addressed Ms. Washington as a "nigger bitch."  Finally of note,

the letter stated, "Ross said you are just like Mayor Walker. 2 nigger bitches.  We hate

blacks."   See Exhibit F.

---

[2] Nikuyah Walker is the former mayor of Charlottesville, Virginia (where OAR is located), and she is a black
woman and the first black woman mayor of Charlottesville.  Mayor Walker has been vocal about issues of race
in Charlottesville.  See *Charlottesville's first black female mayor: 'We're not a post-racial nation'* (Available at
https://www.theguardian.com/us-news/2018/aug/07/charlottesville-virginia-nikuyah-walker-interview).

72. Ms. Washington contacted the FBI after receiving the third letter on October 13, 2020, and the FBI visited Ms. Washington's home to investigate the third letter.  Ms. Washington also spoke with her victim witness advocate about the letter.

73. Even after Ms. Washington received the third racist, sexist letter on October 13, 2020, OAR did not hire any full-time security guard at the OAR office, nor did OAR immediately place additional cameras inside of the OAR office after Ms. Washington received the first racist letter.

74. On information and belief, OAR did not install any additional security cameras inside of the OAR office until after August 4, 2021, at the earliest.

75. As of August 2021, on information and belief, OAR has only installed two additional security cameras in its office.

76. OAR did not voluntarily install these two cameras.  OAR installed this camera in response to Ms. Washington's repeated requests for additional security in the OAR office.

77. OAR allowed Ms. Washington to work from home after Ms. Washington received the first letter, but OAR offered no security for Ms. Washington at her home.

78. Even after Ms. Washington received the second racist, sexist letter, which was mailed to her home, demonstrating that the anonymous harasser knew where Ms. Washington lived, OAR did nothing to ensure that Ms. Washington would be safe when working from home.

79. During the relevant time period, OAR has never had a full-time security guard working in its office, and OAR still has no full-time security guard, despite the fact that Ms. Washington was the victim of a series of hate crimes perpetrated by someone

14

associated with OAR and someone who has access to OAR stationery and staff
mailboxes.

80. OAR has failed to hire a full-time security guard to deter future racist, sexist incidents
from occurring at the OAR office.

81. Upon information and belief, OAR has not reasonably enhanced its security measures
at the office. OAR has only put cameras two cameras outside of Ms. Washington's
office, but OAR has not placed cameras in any other location to deter a future racist
incident from occurring in the office.

82. OAR failed to take effective, prompt, remedial action to stop the culprit(s) of the racist
letters from threatening Ms. Washington.   Accordingly, someone associated with
OAR continued to harass Ms. Washington on the basis of her race, sex, and color.

83. OAR has failed to identify the culprit of the racist letters that Ms. Washington
received in 2020.

84. Upon information and belief, OAR never internally investigated the anonymous call
that Ms. Washington received on August 4, 2020 from an OAR phone number.

85. Upon information and belief, Defendant never conducted anti-harassment or anti-
racism training after Ms. Washington received the first racist letter on July 1, 2020.

86. Upon information and belief, after Ms. Washington received the first racist letter on
July 1, 2020, Defendant did not take appropriate remedial measures to protect Ms.
Washington's physical or psychological safety when in the OAR workplace.

87. Immediately after July 13, 2020, Defendant implemented no additional security
measures to ensure Ms. Washington's psychological and physical safety at work,
despite the fact that Ms. Washington had just received a second racially-motivated

hate letter, which was sent to her home address.  The letter, which was written on

OAR letterhead and sent in an OAR envelope, referenced Ms. Washington as a

"Nigga-bitch" and threatened to put a "noose around [her] neck" if she kept talking.

The letter contained strange symbols, resembling swastikas, symbols used to represent

the Nazi hate group.

88. The letter that Ms. Washington received on July 13, 2020 hatefully referenced Ms.

Washington's race and sex.  This letter also hatefully referred to Ms. Washington

using the sexist, racist term, "nigga-bitch."

89. As of July 13, 2020, Ross Carew was aware that the anonymous harasser knew Ms.

Washington's home address, as Carew visited Ms. Washington's home on July 13,

2020 and reviewed the letter in person.

90. Despite OAR's knowledge that the harasser had threatened to put a "noose" around

Ms. Washington' neck and referred to her as a "nigga bitch," OAR did not

immediately install additional security cameras at the OAR office to monitor the

actions of OAR employees.

91. After Ms. Washington received the second hate letter on July 13, 2020, OAR

implemented no additional measures to monitor and track which OAR employee had

access to OAR letterhead and envelopes.

92. On or around October 13, 2020, just three months after Ms. Washington received the

second hate letter, the anonymous harasser personally visited Ms. Washington's home,

invading her personal space and interfering with her personal property.

93. On or around October 13, 2020, Ms. Washington walked outside to her car and found

a third racist letter, which was addressed to her.  Like the second letter, the third letter

16

was written on OAR letterhead and sent in an OAR envelope.  Further, this letter

referred to Ms. Washington and the then mayor of Charlottesville, Mayor Walker

(who is an African-American woman), as "2 Nigger Bitches." Further the letter states,

"We hate blacks.  The letter further noted that Ms. Washington, "not missed,"

indicating that the harasser knew that Ms. Washington, who at the time was working

remotely, was not working from the office.  Finally, the letter referenced a "Ross,"

stating, "Ross said you are just like Mayor Walker."

94. Ms. Washington's direct supervisor, Andre Key, went to Ms. Washington's home to

review this note on or around October 13, 2020.  Key personally reviewed this letter,

and he has knowledge of the racist, sexist and threatening nature of this letter.

95. Despite the series of hate-filled threats that Ms. Washington received over the course

of less than four months, to date, OAR has not hired a full-time security guard in its

office, despite Ms. Washington's request for a full-time security guard in the office

while she is working in the office.  Furthermore, until August 2021, more than a year

after Ms. Washington began receiving racist threats, OAR had not installed additional

cameras inside of the OAR office to monitor employee and visitor conduct.

96. Defendant did not place additional cameras in the OAR office until more than a year

after Ms. Washington received the first and second letters.

97. On August 4, 2021, through their counsel and upon multiple requests from Ms.

Washington for OAR to implement additional security in the office, OAR offered to

place a camera in the OAR hallway to monitor behavior at all times.  Prior to August

2021, OAR had negligently failed to take this action, despite its knowledge that Ms.

Washington had received a racially-motivated death threat and other racist, sexist letters over a year ago.

98. Through their counsel, in response to Ms. Washington's request that OAR implement a robust security plan prior to requiring Ms. Washington to return to the OAR office full-time, on August 4, 2021, OAR counsel wrote counsel for Ms. Washington's counsel stating:

> ". . . . OAR is willing to place a camera in the hallway outside her office to record activity at all times. OAR is also willing to place Ms. Washington's internal mailbox within her supervisor's office . . . ."

99. OAR's inadequate response to Ms. Washington being issued the first threatening letter allowed two additional letters and a threatening call to be issued to Ms. Washington after she received the first written racist, sexist communication on July 1, 2020.

100.    While each of the letters that Ms. Washington received were vile, sexist, and racist, after July 1, 2020, the letters got increasingly more threatening, violent, and dangerous, as the culprit of the letters invaded Ms. Washington's personal space by mailing a letter to her home on one occasion and on a separate, later occasion coming to her home and placing a letter filled with threats on her car windshield.

101.    On December 22, 2020, Ms. Washington filed a Charge of Discrimination with the EEOC on the basis of race, sex, and color discrimination, as well as retaliation (EEOC Charge No. 438-2021-00362)    On February 15, 2022, Ms. Washington filed

a second Charge of Discrimination with the EEOC on the basis of disability

discrimination and retaliation (EEOC Charge No. 438-2022-00785).[3]

102.        Since Ms. Washington filed her first Charge of Discrimination with the EEOC

and participated in the law enforcement investigation regarding the racist letters that

Ms. Washington has received, OAR has retaliated against Ms. Washington by failing

to provide her a reasonable accommodation for her disabilities, requesting that she

come back to work without having an adequate security plan in place, and

implementing a remote work policy that discriminates against Ms. Washington.

103.        OAR has taken no meaningful safety measures to respond to the racist

behavior that Ms. Washington has endured at the hands of someone associated with

OAR.

104.        OAR has requested that Ms. Washington return to working at the OAR office,

despite the safety risks that she faces at the OAR office.  Ms. Washington has been

diagnosed with depression, anxiety, post-traumatic stress disorder, and she suffered

from sleep deprivation because of the racist incidents that she endured at the hands of

someone associated with OAR.

105.        OAR's request that Ms. Washington return to the OAR office without an

adequate security plan in place to deter future racist, sexist incidents is retaliatory and

continues to create a hostile work environment for Ms. Washington.

---

[3] Ms. Washington is currently exhausting her administrative remedies for her disability discrimination and
failure to accommodate claims.  These claims have been filed with the EEOC and cross-filed with the Virginia
Office of Civil Rights.  Ms. Washington has not yet received a right to sue letter for Charge No. EEOC Charge
No. 438-2022-00785.  Accordingly, Ms. Washington's disability discrimination and failure to accommodate
claims are not currently ripe for adjudication.

106.     Since June 2021, Ms. Washington has submitted multiple letters from her
medical providers to OAR requesting a reasonable accommodation to accommodate
her disabilities of Post-Traumatic Stress Disorder, reactive depression, and anxiety.
At the time that she was experiencing sleep deprivation, she submitted medical
documentation to OAR support her reasonable accommodation request for this
disability.

107.     As a reasonable accommodation, Ms. Washington requested a gradual return to
work schedule and a mutually-agreed upon robust security plan to ensure Ms.
Washington's safety while at the OAR office.

108.     Shortly after Ms. Washington submitted her request for a reasonable
accommodation in or around July 9, 2021, OAR retaliated against Ms. Washington by
refusing her reasonable accommodation requests and continuing to request that she
return to an unsafe office.

109.     OAR has represented that it cannot provide Ms. Washington a reasonable
accommodation.  On August 20, 2021, OAR implemented a new OAR Remote Work
policy, requiring among other things, that employees provide at least one business day
notice and approval by a manager in order to work remotely.  This policy was
implemented just weeks after Ms. Washington requested the reasonable
accommodation to work remotely.

110.     OAR understands that there are instances in which it may not be possible for
Ms. Washington to provide one business day notice when she needs to be out of the
office, based on flare-ups of her anxiety, which produces physical symptoms, such as
nausea and vomiting.

20

111.    On or around November 9, 2021, Ms. Washington became physically ill on her

way to the OAR office.  Her anxiety flared up on her way into the office, making her

so nauseous that she vomited on her clothing, soiling her clothing before arriving at

the OAR office.  When she arrived at the office, she requested the reasonable

accommodation of working from home from her supervisor, Andre Key, and Key

denied her of this accommodation and forced her to use her sick leave, despite her

willingness to work from home.

112.    OAR initially agreed to a temporary "workplace adjustment" to permit Ms.

Washington to have a temporary schedule, which included the ability to work

remotely on select days and during select times.  However, through their counsel,

OAR conceded that this workplace adjustment was not a reasonable accommodation,

and OAR indicated that they would only temporarily honor this "adjustment." OAR is

currently requesting that Ms. Washington return to work full-time, with no agreed-

upon security plan in place to ensure her safety.

113.    OAR's failure to accommodate Ms. Washington's disabilities is in retaliation

for Ms. Washington's engagement in protected activity of participating in a law

enforcement investigation, speaking up about OAR's failure to promote black women

to paid leadership positions, and requesting a reasonable accommodation to

accommodate her disabilities.

114.    OAR has created a retaliatory hostile work environment by requesting that Ms.

Washington return to a workplace that is unsafe for her to work.

115.    The anonymous harasser who sent Ms. Washington the racist, sexist

threatening letters had access to OAR letterhead, OAR envelopes, OAR staff

mailboxes, and staff home addresses.  This anonymous harasser remains on the loose, and Ms. Washington's mental well-being continues to be harmed knowing that there is a possibility that the harasser continues to work at OAR in the office where she was initially the victim of the harasser's hate crime.

116.    On numerous occasions since July 2021, Ms. Washington has requested that OAR implement a safety plan for her return to work as a reasonable accommodation to the disabilities of Post-Traumatic Stress Disorder, Anxiety, and Depression that Ms. Washington suffers from because of the trauma that she has endured.   OAR has refused to hire a full-time security guard, and it only implemented minor security enhancements, and this was in response to several requests from Ms. Washington.

117.    On August 4, 2021, in response to Ms. Washington's request for a security plan as a reasonable accommodation for the disabilities that this matter has caused, OAR offered to implement the following security measures, which had not already been implemented despite the fact that over a year had passed since Ms. Washington received the first racist letter.  Through their counsel, OAR represented that they were willing to place a camera in the hallway outside her office to record activity at all times and they were willing to place Ms. Washington's internal mailbox within her supervisor's office.

118.    Rejecting Ms. Washington's request for a security guard to escort her while she was in the OAR office and provide a designated parking space for Ms. Washington that is in the view of functioning cameras, through their counsel, OAR wrote to Ms. Washington's counsel, conceding that OAR has no full-time security guard, stating,

*" As Ms. Washington also knows, there is an armed Albemarle County Sheriff's Deputy who works in the OAR office up to 20 hours a week. OAR hopes his presence will also provide some sense of comfort to Ms. Washington as she returns to the office."*

119.    Upon information and belief, OAR did not install additional security cameras or place Ms. Washington's mailbox in her supervisor's office until after August 4, 2021, more than a year after Ms. Washington received the first and second hate letter.

120.    To date, OAR has not identified the culprit of the three racist letters and the anonymous phone call that Ms. Washington received on her cell phone in 2020. Ms. Washington lives in a constant state of fear based on the racist threats she received from someone associated with her employer, OAR.

121.    OAR has altered the terms and conditions of Ms. Washington's employment by requesting that she come into a workplace that is not safe for her. OAR's continued rejection of Ms. Washington's requests for a reasonable accommodation, including a robust safety plan, amounts to a retaliatory hostile work environment.

122.    Instead of adequately addressing the racist, sexist threats that Ms. Washington has received, OAR has responded by failing to accommodate Ms. Washington's mental disabilities that she was diagnosed with after being threatened while working. Furthermore, OAR has retaliated against Ms. Washington by failing to put reasonable security measures in place after she received the first letter, allowing someone to send two additional racist letters to her.

123.    In June 2022, OAR retaliated against Ms. Washington by placing her on a performance improvement plan because of her engagement in protected activities. Since being on the pretrial team, Ms. Washington had never received any disciplinary

action. Ms. Washington's engagement in protected activity is a direct and proximate cause of her being subjected to the adverse action of being placed on a performance improvement plan.

124.    Ms. Washington has suffered severe emotional distress damages as a result of receiving the racist, vile, and threatening letters from an anonymous person associated with OAR.

125.    Prior to receiving these letters, Ms. Washington was a very happy and energetic person, with a vibrant, bubbly personality. Now, she is guarded, tired, and her desire to engage with others has drastically decreased.

126.    In addition to being in a constant state of fear, Ms. Washington eating patterns have changed, suffering from a loss of her normal appetite. She does not socialize as often now, and with the exception of her husband, sons, grandchildren, she has isolated herself from others.

127.    As a result of the trauma she experienced from receiving the racist, sexist letters, she has been diagnosed with sleep deprivation, anxiety, depression, and Post Traumatic Stress Disorder.

128.    Since receiving the first racist letter in June 2020, there have been weeks in which Ms. Washington has received only seven hours of sleep for the entire week. She remains terrified of being subjected to another racist attack. She has had countless nightmares since receiving the anonymous letters. Ms. Washington's life has been left emotionally shaken and scarred by an OAR agent threatening her very existence because she is a black woman. Ms. Washington lives in constant fear and anxiety because of the trauma she endured at the hands of someone associated with OAR.

129.     Notably, the OAR office remains an unsafe workplace for Ms. Washington. On

May 6, 2022, the OAR Diversity, Equity, and Inclusion committee hosted a "plate

your success" event.  A cup and plate were used during the event.  On May 6, 2022,

Ms. Washington arrived at work to find a plate and cup on her desk. The cup was

cracked to the point that it looked like someone intentionally cracked the cup. To Ms.

Washington's knowledge, she was the only person to receive a broken, cracked cup.

130.     This is not the first unexplainable incident that has happened since Ms.

Washington received the racist letters in 2020. Bizarre incidents continue to occur in

Ms. Washington's actual office. Her door is constantly locked when she comes into

the office.  Items are inexplicably moved around on Ms. Washington's desk, without

the consent of Ms. Washington. A picture in Ms. Washington's office has been

completely removed from her wall. These strange, unexplainable occurrences continue

to trigger Ms. Washington's anxiety, PTSD, and depression.

131.     Without adequate security in the office, Ms. Washington continues to feel

unsafe and vulnerable to another hate crime at the hands of someone associated with

OAR.

132.     Plaintiff has suffered and continues to suffer substantial loss based on

Defendant's unlawful conduct.  Plaintiff has suffered, inter alia, impairment to her

name and reputation, humiliation, embarrassment, indignation, emotional and physical

distress, and mental anguish.  Plaintiff is entitled to recover damages for such injuries

under Title VII.

133.     Attorneys' fees and costs should be awarded under Title VII, 42 U.S.C. §

2000e-5(k), the Virginia Human Rights Act (as Amended) ("VHRA"), and the

Virginia Whistleblower Protection Law ("WPL").

134.     Defendant continues to demonstrate its disregard for the trauma that Ms.

Washington suffer by requesting that she return to work, despite the fact that they have

done nothing more to enhance their security other than install two cameras outside of

Ms. Washington's office and move her mailbox into her boss' office, more than a year

after Ms. Washington began receiving racist letters.  They have failed to provide any

measurable assurances that Ms. Washington will be safe in the workplace.

## CAUSES OF ACTION

### COUNT I

*Violation of Title VII of the Civil Rights Act of 1964-Harassmsent and Discrimination on the*
*Basis of Race and Color*

135.     Plaintiff re-alleges and incorporates by reference each and every allegation in

this Complaint as though fully set forth herein.

136.     At all times material hereto, Ms. Washington was an employee of Defendant as

defined by Title VII, 42 U.S.C.§ 2000(e), *et seq*.

137.     At all times material hereto, Defendant OAR was an employer within the

meaning of Title VII, 42 U.S.C. § 2000(e), *et seq*.

138.     Title VII, codified at 42 U.S.C. § 2000(e)-2(a)(1), makes it an unlawful

employment practice for Defendant to discriminate against or harass an employee on

the basis of her race and color, among other categories.

26

139.     Plaintiff is an African-American, black, woman, and accordingly, she is within the protected classes of race, sex, and color under Title VII of the Civil Rights Act of 1964.

140.     Plaintiff was subjected to the actions and conduct alleged herein because of her race (African-American) and color (black), in violation of Title VII.  The racist, sexist, and colorist letters that Ms. Washington received in 2020 referenced her race, sex, and color, and the anonymous harasser sent letters to Ms. Washington because of her membership in her protected classes of race, sex, and color.

141.     The three hate letters and anonymous threatening phone call that Ms. Washington received in 2020 from a person associated with OAR were sent to Ms. Washington because of her race (African-American), sex (female), and color (black), and Defendant did not take prompt, appropriate remedial action to stop the discriminatory treatment about which they had knowledge.  Defendant discriminated against and created the hostile work environment that Ms. Washington was enduring on the basis of her race, sex, and color by failing to take prompt, appropriate remedial action to stop the racist, sexist, and colorist harassment that Ms. Washington suffered.

142.     Defendant failed to prevent, reasonably respond to, adequately investigate, and/or resolve instances of race, sex, and color discrimination that Ms. Washington began to endure in July 2020.

143.     Defendant knew or should have known of the hostile work environment that Ms. Washington was subjected to, which is described herein.  Defendant failed to reasonably respond to the harassment that Ms. Washington was subjected to, and

Defendant failed to take appropriate measures to stop the harassment to which Ms. Washington was subjected.

144.     At all relevant times, OAR had actual and constructive knowledge of the discriminatory and harassing conduct alleged herein, and OAR ratified the discrimination and harassment.  As a result of the hostile and offensive work environment maintained by Defendant, Plaintiff suffers from emotional distress.

145.     Ms. Washington was subjected to the unwelcome harassing conduct alleged herein because of her race (African-American), sex (female), and color (black).

146.     Defendant, OAR, has engaged in intentional racial, color, and sex-based discrimination and harassment in the terms and conditions of Plaintiff's employment.

147.     Defendant's differential treatment of Ms. Washington on the basis of her race, sex, and color has created a racially hostile work environment.

148.     The hostile work environment that Ms. Washington is enduring, which is threatening, intimidating, and terrifying, has altered the terms and conditions of her employment with Defendant.   Ms. Washington lives in a state of fear when she is at work based on the death threat and other racist, sexist, and colorist letters that she received from an anonymous harasser, coupled with the minimal security measures in place to protect her while at work.

149.     The three hate-filled and racist, sexist letters, calling Ms. Washington a "nigger," a "bitch," and threatening to put a noose around her neck, among other threats, were unwelcome.  These letters and anonymous phone call were sufficiently severe and pervasive to alter the terms and conditions of Ms. Washington's employment and create a hostile work environment.   The harassment that Ms.

Washington endured at the hands of an anonymous culprit were based on her race, sex, and color.

150.     Ms. Washington perceived and continues to perceive her working environment to be a hostile work environment.

151.     A reasonable person in Ms. Washington's position would consider her working environment to be hostile.

152.     In *Renee Pryor v. United Airlines, Inc.*, 791 F. 3d 488, 496-497 (4th Cir. 2015), the United States Court of Appeals for the Fourth Circuit articulated, "First, the use of 'the word 'nigger' is pure anathema to African-Americans,' as it is to all of us. As the district court elaborated, the '[u]se of that word is the kind of insult that can create an abusive working environment in an instant, and is degrading and humiliating in the extreme." (internal citations omitted).

153.     As a direct and proximate cause of the willing, knowing, and intentional harassment against Ms. Washington, and the failure to act by Defendant, Ms. Washington has suffered mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages.

154.     Defendant did the acts alleged herein maliciously and oppressively, with the wrongful intent to injure Ms. Washington, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Washington's rights.  Ms. Washington is therefore entitled to recover punitive damages from Defendant.

155.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages,

and other appropriate relief.  Reasonable attorney's fees should be awarded under 42

U.S.C. § 2000e-5(k).

## <u>COUNT II</u>

*Violation of Title VII of the Civil Rights Act of 1964-Discrimination and Harassment*

*on the Basis of Ms. Washington's Sex (Female)*

156.    Plaintiff re-alleges and incorporates by reference each and every allegation in

this Complaint as though fully set forth herein.

157.    At all times material hereto, Ms. Washington was an employee of Defendant as

defined by 42 U.S.C. § 2000(e), et seq.

158.    At all times material hereto, Defendant OAR was an employer within the

meaning of 42 U.S.C. § 2000(e), *et seq*.

159.    Title VII, codified at 42 U.S.C. § 2000(e)-2(a)(1), makes it an unlawful

employment practice for Defendant to discriminate against an employee on the basis

of her race, color, and sex among other categories.

160.    Plaintiff is an African-American (race), black (color) woman (female), each

identity constituting a protected class under Title VII of the Civil Rights Act of 1964.

161.    Plaintiff was subjected to the actions and conduct alleged herein because of her

race (African-American), color (black), and sex (female), in violation of Title VII.

162.    The three hate letters and anonymous threatening phone call that Ms.

Washington received in 2020 from a person associated with OAR were sent to Ms.

Washington because of her race (African-American), sex (female), and color (black),

and Ms. Washington's supervisors, Andre Key and Ross Carew, did not take prompt,

appropriate remedial action to stop the discriminatory treatment about which they had knowledge.

163.    At all relevant times, OAR had actual and constructive knowledge of the discriminatory and harassing conduct alleged herein, and OAR ratified the discrimination and harassment.  As a result of the hostile and offensive work environment maintained by Defendant, Plaintiff suffers from emotional distress.

164.    Ms. Washington was subjected to unwarranted, unwelcome harassing conduct because of her race (African-American), sex (female), and color (black).

165.    Defendant, OAR, has engaged in intentional racial, color, and sex-based discrimination and harassment in the terms and conditions of Plaintiff's employment.

166.    Defendant's differential treatment of Ms. Washington on the basis of her race, sex, and color has created a racially hostile work environment.

167.    The three hate-filled and racist letters, calling Ms. Washington a "nigger," a "bitch," and threatening to put a noose around her neck, among other threats, were unwelcome and altered the terms and conditions of Ms. Washington's employment by making her workplace a place of terror for her.  These letters were sent to Ms. Washington because of her sex (female), race (African-American), and color (black).

168.    Notably, the letters used sexist, racist terms to address Ms. Washington, including the sexist and racist terms, "Nigga Girl," "Bigga Bitch," and "Nigger Bitches."

169.    The three letters and anonymous phone call that Ms. Washington received in 2020 referenced herein were sufficiently severe and pervasive to alter the terms and conditions of Ms. Washington's employment and create a hostile work environment.

31

170.     Ms. Washington perceived and continues to perceive her working environment to be a hostile work environment.

171.     A reasonable person in Ms. Washington's position would consider her working environment to be hostile.

172.     Defendant failed to prevent, reasonably respond to, adequately investigate, and/or resolve instances of race, sex, and color discrimination that Ms. Washington began to endure in July 2020.

173.     Defendant knew or should have known of the hostile work environment that Ms. Washington was subjected to, which is described herein.  Defendant failed to reasonably respond to the harassment that Ms. Washington was subjected to, and Defendant failed to take appropriate measures to stop the harassment to which Ms. Washington was subjected.

174.     At all relevant times, OAR had actual and constructive knowledge of the discriminatory and harassing conduct alleged herein, and OAR ratified the discrimination and harassment.  As a result of the hostile and offensive work environment maintained by Defendant, Plaintiff suffers from emotional distress.

175.     Ms. Washington was subjected to unwarranted harassing conduct because of her race (African-American), sex (female), and color (black).

176.     Defendant, OAR, has engaged in intentional racial, color, and sex-based discrimination and harassment in the terms and conditions of Plaintiff's employment.

177.     Defendant's differential treatment of Ms. Washington on the basis of her race, sex, and color has created a racially hostile work environment.

178.    As a direct and proximate cause of the willing, knowing, and intentional harassment against Ms. Washington, and the failure to act by Defendant, Ms. Washington has suffered mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages.

179.    Defendant did the acts alleged herein maliciously and oppressively, with the wrongful intent to injure Ms. Washington, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Washington's rights.  Ms. Washington is therefore entitled to recover punitive damages from Defendant.

180.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Reasonable attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

## **<u>COUNT III</u>**

*Violation of Title VII of the Civil Rights Act of 1964-Unlawful Retaliation*

181.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

182.    Ms. Washington was an employee at all material times referenced herein.

183.    Defendant was Ms. Washington's employer at all material times referenced herein.

184.    Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin" and from retaliating against employees for engaging in activity

protected by Title VII. § 2000e–3(a).   Defendant is prohibited from creating or
ratifying a hostile work environment that is discriminatory.

185.     Plaintiff engaged in statutorily protected activity under Title VII, including
complaining to OAR about the racist, colorist, sexist vile letters she received from an
anonymous person or persons associated with OAR.  Furthermore, Plaintiff engaged in
subsequent numerous protected activities in the form of filing two EEOC Complaints
against OAR (one on December 22, 2020 and the other on February 15, 2022),
participating in an investigation conducted by local and federal law enforcement
agencies regarding the racist, sexist, colorist threatening letters she began receiving in
July 2020, and opposing OAR's failure to promote black women to paid leadership
opposition in June 2020.

186.     OAR, specifically, Ms. Washington's supervisors Ross Carew and Andre Key
have knowledge, that Ms. Washington engaged in the aforementioned protected
activities of participating in a law enforcement investigation regarding the racist letters
that she received.

187.     Carew and Key further have knowledge that Ms. Washington engaged in the
protected activity of filing complaints with the EEOC regarding the racist, sexist,
colorist letters that she received.

188.     Carew and Key further have knowledge that Ms. Washington engaged in the
protected activity of requested a reasonable accommodation to accommodate her
disabilities.

189.     Carew and Key further have knowledge that Ms. Washington engaged in the

protected activity of opposing OAR's failure to promote black women to paid

leadership positions.

190.     OAR subjected Ms. Washington to adverse actions, including but not limited

to, placing Ms. Washington on a performance improvement plan, failing to promptly

and thoroughly conduct an internal investigation after Ms. Washington received the

first three hate letters and anonymous phone call in 2020, failing to place adequate

security measures in place after Ms. Washington received three hate letters and an

threatening phone call, and failing to provide a reasonable accommodation for the

psychological injuries and disabilities that Ms. Washington sustained as a result of

being the victim of the hate crimes that she sustained because of the actions of

someone associated with OAR.

191.     OAR engaged in adverse employment actions against Ms. Washington because

of her opposition to unlawful and discriminatory employment practices in violation of

Title VII.

192.     OAR, including Ms. Washington's supervisors, knew of Ms. Washington's

engagement in protected activity prior to engaging in the aforementioned adverse

actions.

193.     The adverse retaliatory actions to which OAR has subjected Ms. Washington is

a direct result of Plaintiff's engagement in statutorily protected activity.

194.     Ms. Washington's prior protected activity was a motivating factor in

Defendant taking adverse action toward Ms. Washington.

195.     Similarly situated employees were not subjected to similar treatment as that
which OAR subjected Ms. Washington.

196.     Defendant's unlawful, retaliatory conduct has adversely affected the terms,
conditions, and privileges of Ms. Washington's employment with OAR.

197.     By failing to enact adequate security measures to appropriately respond to the
racist, sexist, colorist threats that Ms. Washington began receiving on July 1, 2020,
OAR has retaliated against Ms. Washington by materially altering the terms and
conditions of her employment and by making it so that no reasonable person would
feel safe in her workplace.

198.     Defendant has violated Title VII's anti-retaliation provisions by retaliating
against Ms. Washington by subjecting her to multiple adverse actions, including but
not limited to, placing Ms. Washington on a performance improvement plan, failing to
promptly and thoroughly conduct an internal investigation after Ms. Washington
received the first three hate letters and anonymous phone call in 2020, failing to place
adequate security measures in place after Ms. Washington received three hate letters
and an anonymous threatening phone call, requesting Ms. Washington to return to the
OAR office full-time without an adequate security plan in place, and failing to provide
a reasonable accommodation for the psychological injuries and disabilities that Ms.
Washington sustained as a result of being the victim of the hate crimes that she
sustained because of the actions of someone associated with OAR.

199.     Defendant's adverse actions against Ms. Washington alleged herein bear
sufficient temporal proximity to Ms. Washington's protected activities.

200.    Defendant has created a retaliatory hostile work environment for Ms. Washington based on her engagement in protected activities.  Defendant began taking adverse action against Ms. Washington shortly after she began engaging in protected activities.  Ms. Washington has engaged in a series of protected activities since June 30, 2020, and Defendant's retaliatory actions are ongoing.

201.    Since being asked to return to the office, Ms. Washington has suffered emotional meltdowns, nausea, vomiting, nervousness, and anxiety.  She does not feel safe within the OAR, as the anonymous culprit still has not been identified, and OAR has not implemented a robust security plan to deter future racist acts by persons associated with OAR.

202.    OAR's retaliatory acts were materially adverse, and such acts would dissuade a reasonable person from engaging in protected activity.

203.    OAR has been intentional, deliberate, willful, malicious, reckless, and acted in callous disregard to Plaintiff's rights, entitling her to punitive damages.

204.    As a result of OAR's unlawful retaliation, Plaintiff has suffered and will continue to suffer harm, including but not limited to, lost wages, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical stress, mental anguish, and other economic and non-economic damages.

205.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Reasonable attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

206.     Defendant's actions are ongoing, and these actions continue to harm Ms.

Washington.

## <u>COUNT IV</u>

*Violation of the Virginia Whistleblower Protection Law ("WPL") (Va. Code Ann. § 2.2-3011)*

207.     Plaintiff re-alleges and incorporates by reference each and every allegation in

this Complaint as though fully set forth herein.

208.     Plaintiff was an employee under the WPL at all material times referenced

herein.

209.     Defendant was Ms. Washington's employer at all material times referenced

herein.

210.     The WPL prohibits an employer from discharging, threatening, or otherwise

discriminating or retaliating against a whistleblower, in whole or in part, because the

whistleblower is requested or subpoenaed by an appropriate party to participate in an

investigation, hearing, or inquiry by an appropriate authority or in a court action.

211.     In good faith and upon reasonable belief that the information she was

disclosing was accurate, Ms. Washington disclosed information about suspected

wrongdoing or abuse by OAR to law enforcement agencies and participated in

investigations conducted by local and federal law enforcement agencies, including the

EEOC and the FBI after she began receiving racist, sexist, and colorist letters on July

1, 2020.

212.     Ms. Washington participated in investigations conducted by law enforcement

agencies regarding the hate letters she received from someone associated with OAR in

2020.

213.    Defendant violated the WPL by retaliating against Ms. Washington by subjecting her to multiple adverse actions, including but not limited to, placing Ms. Washington on a performance improvement plan, failing to promptly and thoroughly conduct an internal investigation after Ms. Washington received the first three hate letters and anonymous phone call in 2020, failing to place adequate security measures in place after Ms. Washington received three hate letters and an anonymous threatening phone call, requesting Ms. Washington to return to the OAR office full-time without an adequate security plan in place, and failing to provide a reasonable accommodation for the psychological injuries and disabilities that Ms. Washington sustained as a result of being the victim of the hate crimes that she sustained because of the actions of someone associated with OAR.

214.    Defendant's adverse actions against Ms. Washington alleged herein bear sufficient temporal proximity to Ms. Washington's protected activities.

215.    Defendant has created a retaliatory hostile work environment for Ms. Washington based on her engagement in protected activities.  Defendant began taking adverse action against Ms. Washington shortly after she began engaging in protected activities.  Ms. Washington has engaged in a series of protected activities since June 30, 2020, and Defendant's retaliatory actions are ongoing.

216.    By failing to enact adequate security measures to appropriately respond to the racist threats that Ms. Washington began receiving on July 1, 2020, OAR has retaliated against Ms. Washington by materially altering the terms and conditions of her employment and by making it so that no reasonable person would feel safe in her workplace.

217.    As a result of OAR's unlawful retaliation, Plaintiff has suffered and will continue to suffer harm, including but not limited to, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical stress, mental anguish, and other economic and non-economic damages.

218.    Plaintiff is entitled to all legal and equitable remedies available for violations of the WPL, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Reasonable attorney's fees should be awarded under the WPL.

219.    OAR, including Ms. Washington's supervisors, knew of Ms. Washington's engagement in protected activity prior to engaging in the aforementioned adverse actions.

220.    The adverse retaliatory actions to which OAR has subjected Ms. Washington is a direct result of Plaintiff's engagement in statutorily protected activity.

221.    Defendant's actions are ongoing, and these actions continue to harm Ms. Washington.

## COUNT V

### *Violation of the Virginia Human Rights Act (as Amended)-Race and Color Discrimination and Harassment*

222.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

223.    The Virginia Human Rights Act (as amended) (Va. Code Ann. § 2.2-3900 *et seq.*)  prohibits discrimination on the basis of race, color, sex, among other protected categories.

40

224.    At all times material hereto, Ms. Washington was an employee of Defendant as
defined by the Virginia Human Rights Act ("VHRA").

225.    The VHRA makes it an unlawful employment practice for Defendant to
discriminate against an employee on the basis of her race and color, among other
categories.

226.    Plaintiff is an African-American, black woman, constituting a protected class
under the VHRA.

227.    Plaintiff was subjected to the actions and conduct alleged herein because of her
race (African-American), sex (female) and color (black), in violation of the VHRA.

228.    The three hate letters and anonymous threatening phone call that Ms.
Washington received in 2020 from a person associated with OAR were sent to Ms.
Washington because of her race (African-American), sex (female), and color (black),
and Ms. Washington's supervisors, Andre Key and Ross Carew, did not take prompt,
appropriate remedial action to stop the discriminatory treatment about which they had
knowledge.

229.    Defendant knew or should have known of the hostile work environment that
Ms. Washington was subjected to, which is described herein.  Defendant failed to
reasonably respond to the harassment that Ms. Washington was subjected to, and
Defendant failed to take appropriate measures to stop the harassment to which Ms.
Washington was subjected.

230.    Defendant failed to prevent, reasonably respond to, adequately investigate,
and/or resolve instances of race, sex, and color discrimination that Ms. Washington
began to endure in July 2020.

231.     At all relevant times, OAR had actual and constructive knowledge of the discriminatory and harassing conduct alleged herein, and OAR ratified the discrimination and harassment.  As a result of the hostile and offensive work environment maintained by Defendant, Plaintiff suffers from emotional distress.

232.     Ms. Washington was subjected to unwarranted harassing conduct because of her race (African-American), sex (female), and color (black).

233.     Defendant, OAR, has engaged in intentional racial, color, and sex-based discrimination and harassment in the terms and conditions of Plaintiff's employment.

234.     Defendant's differential treatment of Ms. Washington on the basis of her race, sex, and color has created a racially hostile work environment.

235.     The three hate-filled and racist letters, calling Ms. Washington a "nigger," a "bitch," and threatening to put a noose around her neck, among other threats, were unwelcome.  These letters and anonymous phone call were sufficiently severe and pervasive to alter the terms and conditions of Ms. Washington's employment and create a hostile work environment.   The harassment that Ms. Washington endured at the hands of an anonymous culprit were based on her race, sex, and color.

236.     Ms. Washington perceived and continues to perceive her working environment to be a hostile work environment.

237.     A reasonable person in Ms. Washington's position would consider her working environment to be hostile.

238.     As a direct and proximate cause of the willing, knowing, and intentional harassment against Ms. Washington, and the failure to act by Defendant, Ms.

Washington has suffered mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages.

239.     Defendant did the acts alleged herein maliciously and oppressively, with the wrongful intent to injure Ms. Washington, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Washington's rights.  Ms. Washington is therefore entitled to recover punitive damages from Defendant, in an amount according to proof at the time of trial.

240.     Defendant was Ms. Washington's employer at all material times referenced herein.

241.     OAR acted with ill will, and in particular, a desire to punish and retaliate against Plaintiff for pursuing her discrimination claims in this action.  OAR has taken a series of retaliatory acts against Plaintiff for her engagement in the protected acts of filing complaints with the EEOC, participating in an FBI investigation regarding the racist and threatening letters she received, and for requesting a reasonable accommodation for the disabilities that she has suffered.

242.     Plaintiff is entitled to all legal and equitable remedies available for violations of the VHRA, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Reasonable attorney's fees should be awarded under the VHRA.

## **COUNT VI**

*Violation of the Virginia Human Rights Act (as amended)-Discrimination and Harassment on Basis of Ms. Washington's Sex (Female)*

43

243.     Plaintiff re-alleges and incorporates by reference each and every allegation in
this Complaint as though fully set forth herein.

244.     At all times material hereto, Ms. Washington was an employee of Defendant as
defined the VHRA.

245.     At all times material hereto, Defendant OAR was an employer within the
meaning of the VHRA.

246.     The VHRA makes it an unlawful employment practice for Defendant to
discriminate against an employee on the basis of her sex.

247.     Plaintiff is an African-American, black woman, constituting a protected class
under the VHRA.

248.     Plaintiff was subjected to the actions and conduct alleged herein because of her
sex (female).

249.     The three hate letters and anonymous threatening phone call that Ms.
Washington received in 2020 from a person associated with OAR were sent to Ms.
Washington because of her race (African-American), sex (female), and color (black),
and Ms. Washington's supervisors, Andre Key and Ross Carew, did not take prompt,
appropriate remedial action to stop the discriminatory treatment about which they had
knowledge.

250.     At all relevant times, OAR had actual and constructive knowledge of the
discriminatory and harassing conduct alleged herein, and OAR ratified the
discrimination and harassment.  As a result of the hostile and offensive work
environment maintained by Defendant, Plaintiff suffers from emotional distress.

44

251.     Ms. Washington was subjected to unwarranted harassing conduct because of her race (African-American), sex (female), and color (black).

252.     Defendant, OAR, has engaged in intentional racial, color, and sex-based discrimination and harassment in the terms and conditions of Plaintiff's employment.

253.     Defendant's differential treatment of Ms. Washington on the basis of her race, sex, and color has created a racially hostile work environment.

254.     The three hate-filled and racist letters, calling Ms. Washington a "nigger," a "bitch," and threatening to put a noose around her neck, among other threats, were unwelcome.  These letters and anonymous phone call were sufficiently severe and pervasive to alter the terms and conditions of Ms. Washington's employment and create a hostile work environment.

255.     Notably, the letters used sexist, racist terms to address Ms. Washington, including the sexist and racist terms, "Nigga Girl," "Bigga Bitch," and "Nigger Bitches."

256.     Ms. Washington perceived and continues to perceive her working environment to be a hostile work environment.

257.     A reasonable person in Ms. Washington's position would consider her working environment to be hostile.

258.     Defendant knew or should have known of the hostile work environment that Ms. Washington was subjected to, which is described herein.  Defendant failed to reasonably respond to the harassment that Ms. Washington was subjected to, and Defendant failed to take appropriate measures to stop the harassment to which Ms. Washington was subjected.

45

259.     As a direct and proximate cause of the willing, knowing, and intentional harassment against Ms. Washington, and the failure to act by Defendant, Ms. Washington has suffered mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages.

260.     Defendant did the acts alleged herein maliciously and oppressively, with the wrongful intent to injure Ms. Washington, from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Washington's rights.  Ms. Washington is therefore entitled to recover punitive damages from Defendant.

261.     Plaintiff is entitled to all legal and equitable remedies available for violations of the VHRA, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Reasonable attorney's fees should be awarded under the VHRA.

## <u>COUNT VII</u>

*Violation of the Virginia Human Rights Act (as amended)-Unlawful Retaliation*

262.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

263.     At all times material hereto, Ms. Washington was an employee of Defendant as defined the VHRA.

264.     Defendant was Ms. Washington's employer at all material times referenced herein.

265.     Plaintiff engaged in statutorily protected activity under the VHRA, including complaining to OAR about the racist, sexist vile letters she received from an anonymous person or persons associated with OAR.  Furthermore, Plaintiff engaged in

subsequent numerous protected activities in the form of filing two EEOC Complaints against OAR (one on December 22, 2020 and the other on February 15, 2022), participating in an investigation conducted by local and federal law enforcement agencies regarding the racist, threatening letters she began receiving in July 2020, and opposing OAR's failure to promote black women to paid leadership opposition.

266.     Defendant has violated the VHRA's anti-retaliation provisions by retaliating against Ms. Washington by subjecting her to multiple adverse actions, including but not limited to, placing Ms. Washington on a performance improvement plan, failing to promptly and thoroughly conduct an internal investigation after Ms. Washington received the first three hate letters and anonymous phone call in 2020, failing to place adequate security measures in place after Ms. Washington received three hate letters and an anonymous threatening phone call, requesting Ms. Washington to return to the OAR office full-time without an adequate security plan in place, and failing to provide a reasonable accommodation for the psychological injuries and disabilities that Ms. Washington sustained as a result of being the victim of the hate crimes that she sustained because of the actions of someone associated with OAR.

267.     Defendant's adverse actions against Ms. Washington alleged herein bear sufficient temporal proximity to Ms. Washington's protected activities.

268.     Defendant has created a retaliatory hostile work environment for Ms. Washington based on her engagement in protected activities.  Defendant began taking adverse action against Ms. Washington shortly after she began engaging in protected activities.  Ms. Washington has engaged in a series of protected activities since June 30, 2020, and Defendant's retaliatory actions are ongoing.

269.     OAR engaged in adverse employment actions against Ms. Washington because
of her opposition to unlawful and discriminatory employment practices in violation of
the VHRA.

270.     OAR, including Ms. Washington's supervisors, knew of Ms. Washington's
engagement in protected activity prior to engaging in the aforementioned adverse
actions.

271.     The adverse retaliatory actions to which OAR has subjected Ms. Washington is
direct result of Plaintiff's engagement in statutorily protected activity.

272.     Ms. Washington prior protected activity was a motivating factor in Defendant
taking adverse action toward Ms. Washington.

273.     Similarly situated employees were not subjected to similar treatment as that
which OAR subjected Ms. Washington.

274.     Defendant's unlawful, retaliatory conduct has adversely affected the terms,
conditions, and privileges of Ms. Washington's employment with OAR.

275.     OAR's retaliatory acts were materially adverse, and such acts would dissuade a
reasonable person from engaging in protected activity.

276.     OAR has been intentional, deliberate, willful, malicious, reckless, and acted in
callous disregard to Plaintiff's rights, entitling her to punitive damages.

277.     As a result of OAR's unlawful retaliation, Plaintiff has suffered and will
continue to suffer harm, including but not limited to, lost wages, lost benefits, lost
future employment opportunities, humiliation, embarrassment, reputational harm,
emotional and physical stress, mental anguish, and other economic and non-economic
damages.

278.        Plaintiff is entitled to all legal and equitable remedies available for violations

of the VHRA, including back pay, front pay, compensatory damages, punitive

damages, and other appropriate relief.  Reasonable attorney's fees should be awarded

under the VHRA.

279.        Defendant's actions are ongoing, and these actions continue to harm Ms.

Washington.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Kimberly Washington, respectfully prays that this Court grant her

the following relief:

1.  Award Plaintiff all pre-judgment and post-judgment interest available under law;

2.  Award Plaintiff all back pay, front pay, lost benefits, liquidated damages, compensatory

    damages, punitive damages, and other damages available under law in the amount of

    $3,000,000.00 (Three Million Dollars);

3.  Enter a declaratory judgment finding that the forgoing actions of Defendant violated

    Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000, *et. seq*.), the Virginia

    Human Rights Act (as amended) (Va. Code Ann. § 2.2-3900 *et seq*.), and the Virginia

    Whistleblower Protection Law (Va. Code Ann. § 2.2-3011);

4.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary

    to remedy the effects of the illegal, discriminatory, harassing, and retaliatory conduct

    described herein in order to prevent similar occurrences in the future;

5.  Award compensatory damages to compensate Plaintiff for the economic loss,

    reputation, lost job benefits, physical and psychological injury, humiliation,

embarrassment, and mental and emotional distress caused by the conduct of OAR alleged herein;

6. Award Plaintiff's reasonable attorney's fees and litigation costs incurred in this action; and

7. Order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable of right to a jury.

Dated: July 22, 2022                              Respectfully submitted,

*Jessica Childress*
_____
Jessica N. Childress, Esq.
(VA Bar. No. 80219)
The Childress Firm PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (202) 204-2200
Email: Jchildress@thechildressfirm.com

*Counsel for Plaintiff*